UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALAN R. HECHT,<br><br>                Plaintiff,<br><br>   v.<br><br>LEGEND SENIOR LIVING, LLC,<br>and ALLENTOWN PCH, LLC,<br>                Defendants. | No. 5:25-cv-5397 |

**O P I N I O N**
**Motion to Dismiss under Rule 12(b)(6), ECF No. 17 – Converted into Rule 56 Motion and Granted**

**Joseph F. Leeson, Jr.**                                         **April 21, 2026**
**United States District Judge**

## I.        INTRODUCTION

Plaintiff Alan R. Hecht initiated this action for elder neglect and abuse against Defendant Allentown PCH, LLC, an assisted living facility, and Defendant Legend Senior Living, LLC, its parent company. Plaintiff brings claims for breach of contract, breach of duty of care, fraud, breach of unfair trade practices and consumer protection law, negligence per se, piercing the corporate veil, and unjust enrichment. Defendants move to dismiss the claims for breach of duty of care, fraud, and negligence per se, pursuant to Fed. R. Civ. P. 12(b)(6), arguing they were brought outside of the two-year Pennsylvania statute of limitations. Plaintiff responds that such an affirmative defense should not be resolved on a motion to dismiss, and that Defendants' statute of limitations argument relies on evidence outside the pleadings. The Court gave notice of its intent to convert the motion to dismiss into a motion for summary judgment and gave the parties time to supplement their arguments. After a review of the full record, and for the reasons discussed below, the Motion to Partially Dismiss is hereby converted into a motion for partial summary judgment, and granted.

042126

II.   **BACKGROUND**[1]

A.   **Factual Background**

Plaintiff Alan R. Hecht is an elderly individual who, from September 29, 2020, to April 7, 2023, lived as a resident at Legend of Allentown, an assisted living facility located in Macungie, Pennsylvania. Second Am. Compl. ¶¶ 1, 6, 11, 27, ECF No. 15. Defendant Allentown PCH, LLC provides personal care, assisted living, and memory care services to elderly residents at Legend of Allentown. *Id.* at ¶ 8. Legend of Allentown and Allentown PCH, LLC are owned and operated by Defendant Legend Senior Living, LLC. *Id.* at ¶¶ 7-8.

Upon becoming a resident at Legend of Allentown (hereinafter "Legend" or "Defendants' facility"), Plaintiff entered into a residency agreement with Defendants, pursuant to which Plaintiff was to be provided with room and board, three daily meals daily, and various personal care services to help manage his hypertension and diabetes mellitus, including: medication management; communication with third party service providers; dietary oversight; assistance with daily living activities; physical therapy; and transportation to medical appointments. *See id.* at ¶¶ 12-13, 15. Plaintiff paid a monthly fee for these services but alleges

---

[1]   "[A] court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense[,] [in order] to afford the plaintiff an opportunity to respond." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992)). Having done so, the Court shall reference in this factual background section the extraneous evidence provided by Defendants, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (finding that a party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact), as well as that produced by Plaintiff during his opportunity to respond, Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324 (explaining that, once such a showing has been made, the non-moving party must go beyond the pleadings and produce evidence to demonstrate specific material facts which give rise to a genuine issue). When deciding a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). All evidence must be considered in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). This background section is drafted accordingly.

that he did not receive the full extent of services he was entitled to under the agreement. *See id.* at ¶¶ 15-16. Instead, Plaintiff asserts that he was subjected to extreme neglect by Legend staff, including but not limited to: being intentionally over-medicated and under-medicated at various times, being under-exercised and not encouraged to attend meals, being fed a high-sugar diet, and even being "frequently left sitting in his own excrement and urine for hours or even days,"[2] due to incontinence issues exacerbated by his diabetes and the staff's failure to clean or replace his mattress cover with a waterproof one. *Id.* at ¶¶ 16-21. Plaintiff alleges that Legend staff also falsified internal records to cover up this mistreatment, reporting that Plaintiff "refus[ed] medication, assistance, and meals," *id.* at ¶¶ 16, 22, and that Plaintiff "refus[ed] to be transported to and be treated by doctors in connection with his diabetes," *id.* at ¶ 23. Plaintiff denies ever refusing any of these services. *Id.* at ¶¶ 22-23. Plaintiff asserts that it was not until September 2022, when a new staff member began working at the facility and took an interest in Plaintiff's care, that his hygiene conditions and diet improved. *Id.* at ¶ 20. Said employee, later identified as Ms. Teehonestee Johnson, *see* Johnson Decl., ECF No. 21, was reportedly terminated soon after she voiced these concerns to Legend staff, *see id.* at ¶¶ 8-14; Second Am. Compl. ¶¶ 26, 33 (describing Ms. Johnson as one of several former "whistleblower" employees of Defendants).

Plaintiff vacated Defendants' facility on April 7, 2023, "due to ongoing mistreatment and inability to obtain required medical services." Second Am. Compl. ¶ 27. Plaintiff alleges that, upon vacating Legend, he was a shell of his former self," *id.*, "confused," *id.* at ¶¶ 23, 28, "vulnerable, compromised, and unable to access or verify falsified records during the course of his residency at Legend of Allentown," *id.* at ¶ 30. Only once he moved to a new facility did

---

[2]    Plaintiff attached photographs of this unpleasant scene—depicting human waste stains on the furniture in Plaintiff's room—to his Second Amended Complaint. *See* Second Am. Compl. ¶ 18.

Plaintiff begin to "recount some abuse and mistreatment in late 2023 and into 2024, as his cognition improved," and as he "compared notes, and experiences, with former employees of Defendants." *Id.* at ¶ 33. Plaintiff alleges that these "whistleblower" employees helped him to "connect the dots and better understand how he was being neglected and abused by Defendants," *id.* at ¶¶ 33-34, "confirm[ing] Plaintiff's belief . . . that he was neglected and abused" while residing there, *id.* at ¶ 37. Plaintiff alleges that such information "was conveyed in or around October 2023." *Id.* Plaintiff also asserts that it was not until these conversations with Defendants' former employees that he discovered the details of his mistreatment, because Defendants' acts of falsifying records and reports "prevented reasonable discovery of Plaintiff's injuries by himself or others." *Id.* at ¶ 30.

### B.    Procedural History

Plaintiff filed his initial Complaint in this Court on September 18, 2025. *See* Compl., ECF No. 1. Plaintiff filed an Amended Complaint on October 27, 2025, *see* Am. Compl., ECF No. 7, which Defendants moved to partially dismiss, *see* ECF No. 9. Then, on December 8, 2025, Plaintiff filed his Second Amended Complaint, *see* ECF No. 15, so the Court dismissed the Motion to Partially Dismiss the Amended Complaint as moot, *see* ECF No. 16. Plaintiff's Second Amended Complaint brings claims for breach of contract (Count I), breach of duty of care (Count II), fraud (Count III), breach of Unfair Trade Practices and Consumer Protection Law, 42 Pa.C.S. § 5527(6) (Count IV), negligence per se (violation of resident rights under PCH Licensing Law, 55 Pa. Code Ch. 2600) (Count V), piercing the corporate veil (Count VI), and unjust enrichment/financial exploitation (Count VII). *See* Second Am. Compl.

On December 29, 2025, Defendants filed a Motion to Partially Dismiss Plaintiff's Second Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Motion, ECF

No. 17. In it, Defendants argue that the claims for breach of duty of care, fraud, and negligence per se, as well as the personal injury damages claims, should be dismissed because they are barred by the Pennsylvania two-year statute of limitations under 42 Pa.C.S. § 5524. *See id.* Defendants argue that the circumstances giving rise to these claims occurred more than two years before the filing of Plaintiff's Complaint in September of 2025, and that Plaintiff was then aware of this. *See id.* Defendants produce a copy of a Demand Letter received from Plaintiff's counsel on May 15, 2023, following an "investigation" into Plaintiff's care, claiming that Defendants subjected Plaintiff "to abuse, neglect, and negligence in various forms." Def. Br. 5, ECF No. 17-2; Demand Letter, ECF No. 17-1 at 1-3. Defendants also attach correspondence received from Plaintiff's counsel on May 26, 2023, which claimed that Plaintiff had "graphic photographic evidence" of the alleged abuse and extended counsel's demand offer deadline. Def. Br. at 5-6; Emails, ECF No. 17-1 at 4-11.

Plaintiff responded to Defendants' Motion on January 12, 2026, arguing that a motion to dismiss is not the appropriate setting for a court to consider a statute of limitations defense, nor to consider evidence not publicly available or included within, attached to, or relied upon in the operative pleading. *See* Resp., ECF No. 19. On March 4, 2026, the Court voiced an intent to convert Defendants' Motion into one for summary judgment and gave the parties time to supplement their arguments. *See* ECF No. 20. On March 20, 2026, Plaintiff filed a Declaration by Ms. Teehonestee Johnson. *See* Johnson Decl., ECF No. 21. In her Declaration, Ms. Johnson states that from January 2023 through April 2023 she was employed by Legend and "regularly worked with and assisted resident Alan Hecht," as his Med Tech. *Id.* at ¶¶ 1-2. Ms. Johnson notes that Plaintiff "appeared significantly neglected," *id.* at ¶ 4, and that "[s]taff were simply not caring for him," *id.* at ¶ 5, describing the medication mismanagement and poor hygiene care that

Plaintiff was made to endure, *id.* at ¶¶ 4-7. Ms. Johnson also detailed the circumstances of her termination from Legend in April 2023, and attributes it to a confrontation she had with kitchen staff after Plaintiff had been given a "full sugar soda" in contravention of his diabetes-friendly diet plan. *See id.* at ¶¶ 8-10. Ms. Johnson states that "[s]ince April 2023, [she has] been in contact with Mr. Hecht, and even went to see him at his new residence in New Jersey." *Id.* at ¶ 18. To her knowledge, Ms. Johnson believes all facts set forth in the Second Amended Complaint and Plaintiff's Opposition to the Motion to Dismiss to be accurate. *Id.* at ¶ 3.

## III.   LEGAL STANDARDS

### A.   Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### B. Pennsylvania Statute of Limitations for Personal Injury and Fraud Actions under 42 Pa. C.S. § 5524

Under Pennsylvania law,[3] the following actions must be commenced within two years: "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another"; *see* 42 Pa. C.S. § 5524(2), and "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud," *see id.* at § 5524(7). The two-year limitations period begins to run when the cause of action accrues, *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 218 (3d Cir. 2022) (citing *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246 (Pa. 2021)), *i.e.*, when "the right to institute and maintain the suit arises,"

---

[3]   A federal court sitting in diversity must apply "the choice-of-law principles of its forum state to determine which substantive law governs whether a party is entitled to judgment as a matter of law." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Here, the forum state is Pennsylvania, and "[u]nder Pennsylvania choice-of-law rules, the first step involves assessing whether a conflict exists between the substantive law of multiple jurisdictions." *Id.* (citing *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 404 (3d Cir. 2016)). Where no conflict exists, as here, the Court applies Pennsylvania substantive law to predict how the Pennsylvania Supreme Court might decide the issue. *Id.*; *see Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006); *Dixon Ticonderoga Co. v. Est. of O'Connor*, 248 F.3d 151, 160 (3d Cir. 2001); *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). Statutes of limitations are considered substantive for *Erie* purposes. *Dixon Ticonderoga Co.*, 248 F.3d at 160–61 (citing *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). Hence, this Court shall apply Pennsylvania's statute of limitations for personal injury and fraud actions, which is two years. *See* 42 Pa. C.S. § 5524.

*Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 143–44 (3d Cir. 1997) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

"It is well established that Pennsylvania law recognizes an exception to the statute of limitations which 'delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause.'" *Id.* at 144 (quoting *Urland v. Merrell–Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1271 (3d Cir. 1987)). This doctrine is often referred to as the "discovery rule." *See Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006). "The discovery rule is designed to 'ameliorate the sometimes-harsh effects of the statute [of limitations].'" *Id.* (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 500 (Pa. Super. Ct. 1984)). "Under the rule, even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *Id.* (citing *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003)). A plaintiff need not know the "exact nature" of his injury, *id.* (citing *Ackler v. Raymark Indus., Inc.*, 551 A.2d 291, 293 (Pa. Super. Ct. 1988)), but must have "actual or constructive knowledge of at least some form of significant harm" and be on notice thereof, even if he does not know its "precise cause," *SodexoMAGIC*, 24 F.4th at 219 (citing *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011)).

Another exception to the statute of limitations is the doctrine of fraudulent-concealment tolling, which "allows tolling of the statute of limitations for the period in which the opposing party, through fraud or concealment, causes another party to 'relax [its] vigilance or deviate from [its] right of inquiry into the facts.'" *Id.* (quoting *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005)). "Courts employ the 'same "knew or should have known" standard whether the statute is tolled

because of the discovery rule or because of fraudulent concealment.'" *Beauty Time, Inc.*, 118 F.3d at 144 (quoting *Urland*, 822 F.2d 1268, 1273 (3d Cir. 1987)); *see also Wise v. Mortg. Lenders Network USA, Inc.*, 420 F. Supp. 2d 389, 395 (E.D. Pa. 2006) ("Moreover, when 'the underlying events being sued upon sound inherently in fraud or deceit . . . that, without more, will toll the statute of limitations until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence by [the] plaintiff.'") (quoting *Beauty Time, Inc.*, 118 F.3d at 144).

## IV.   ANALYSIS

### A.   The discovery rule does not toll the limitations period.

Plaintiff initiated the instant action by filing a Complaint in this Court on September 18, 2025. *See* Compl., ECF No. 1. To be within the statute of limitations, *see* 42 Pa. C.S. § 5524, Plaintiff's personal injury and fraud causes of action must have accrued within the preceding two years—on or after September 18, 2023, *see SodexoMAGIC*, 24 F.4th at 218. Interestingly, Plaintiff states that five months prior to that date, on April 7, 2023, he "vacated [Defendants'] facility due to ongoing mistreatment and inability to obtain required medical services." Second Am. Compl. ¶ 27. This would suggest that Plaintiff's harms accrued prior to April 2023, and that the two-year clock began to run around that time. Yet, in the Second Amended Complaint, Plaintiff invokes the discovery rule, arguing that the statute of limitations was tolled until he discovered the extent of the elder abuse he had previously suffered. *See id.* Plaintiff alleges that in April of 2023 he was "confused," *id.* at ¶¶ 23, 28, "vulnerable, compromised, and unable to access or verify falsified records during the course of his residency at Legend of Allentown," *id.* at ¶ 30. Plaintiff claims that he only began to "recount some abuse and mistreatment in late 2023 and into 2024, as his cognition improved," *id.* at ¶ 33, particularly after speaking with former

"whistleblower" employees of Defendants, "in or around October 2023," who helped Plaintiff realize "that he was neglected and abused" while housed at Defendants' facility, *id.* at ¶ 37.

Defendants' Motion argues that the discovery rule is inapplicable here because Plaintiff was aware of his alleged injuries, and the extent to which they were caused by Defendants, several months before September 2023. *See* Motion. Defendants point to Plaintiff counsel's May 15, 2023, Demand Letter, which asserted that Plaintiff was "subjected to abuse, neglect, and negligence in various forms" at Defendants' facility, and that Plaintiff's counsel had conducted an extensive investigation into Plaintiff's care and resultant injuries. Def. Br. at 5 (citing Demand Letter at 1). Defendants also point to Plaintiff counsel's May 26, 2023, email correspondence, which indicated that Plaintiff had obtained "graphic photographic evidence" of the alleged abuse by that date. *Id.* at 5-6 (citing Emails at 7).

To consider this extraneous evidence, the Court voiced an intent to convert Defendants' Motion into one for summary judgment and gave Plaintiff time to supplement his arguments. Plaintiff utilized this opportunity to file a Declaration by Ms. Teehonestee Johnson, a former "whistleblower" employee at Defendants' facility. *See* Johnson Decl. Ms. Johnson's Declaration states that she worked at Defendant's facility from January 2023 to April 2023, *id.* at ¶ 1, that she regularly attended to Plaintiff while working there, *id.* at ¶ 2, that she witnessed firsthand the neglect he suffered at the hands of Defendants' other employees—from being left uncleaned and sitting in his own excrement to having his dietary needs overlooked, *id.* at ¶¶ 4-8—and that she was terminated after she confronted Legend staff about these issues, *id.* at ¶¶ 8-10. Ms. Johnson further states that she "reviewed the Second Amended Complaint in this matter, and Plaintiff's Opposition to the Motion to Dismiss, and believe[s] all facts set forth therein are accurate." *Id.* at ¶ 3. Importantly, the second-to-last paragraph in the Declaration reads as follows: "Since April

2023, I have been in contact with Mr. Hecht, and even went to see him at his new residence in New Jersey." *Id.* at ¶ 18.

While Ms. Johnson's statement that she believes *all* of Plaintiff's factual allegations to be accurate can be read as support for more specific assertions (like Plaintiff's contention that he only began to "recount some abuse and mistreatment in late 2023 and into 2024," Second Am. Compl. ¶ 33, once he spoke with certain "whistleblower" employees of Defendants "in or around October 2023," *id.* at ¶ 37), Ms. Johnson does not directly confirm these facts, as Plaintiff's counsel suggested she might. Ms. Johnson's Declaration does not say that it was *she* who spoke with Plaintiff in October 2023 or that Plaintiff met with any former employee of Defendants around that time. Nor does it indicate that Plaintiff lacked knowledge of his injury prior to then. In fact, the Declaration is largely silent as to when Plaintiff obtained actual or constructive knowledge of his injury and its causation, save the statement that Ms. Johnson has "been in contact" with Plaintiff "[s]ince April 2023." Johnson Decl. at ¶ 18. Thus, Plaintiff likely had constructive knowledge of his injury in April 2023, since his conversations with at least one whistleblower employee date back to that time, and Plaintiff left Defendants' facility that month "due to ongoing mistreatment and inability to obtain required medical services." Second Am. Compl. ¶ 27. If nothing else, Plaintiff counsel's Demand Letter confirms that Plaintiff initiated talks with Ms. Johnson by May 15, 2023, the date of the Letter, because it mentions Ms. Johnson by name, and recounts the statements later produced in her Declaration. *See* Demand Letter. Taken altogether, these facts do not support Plaintiff's assertion that he was unable to piece together the circumstances of his abuse and neglect prior to the fall of 2023.

The Court therefore finds that, even if Plaintiff was not aware of the full extent of his injuries prior to October 2023, he was nonetheless aware of the lack of proper treatment he

received from Defendants by April 2023, and he became aware of more factual details by May 2023. These discovery events occurred months before September 2023 and are therefore inconsistent with Plaintiff's allegation that he only began to "connect the dots and better understand how he was being neglected and abused by Defendants" in "late 2023 and into 2024." Second Am. Compl. ¶¶ 33-34. The Court finds that Plaintiff had constructive knowledge of his injuries and Defendants' role in causing them by the end of May 2023. Accordingly, this Court concludes that the two-year statute of limitations, *see* 42 Pa. C.S. § 5524, was not tolled by the discovery rule. Plaintiff's personal injury and fraud claims are barred by Pennsylvania's statute of limitations, *see Mest*, 449 F.3d at 510, and summary judgment will be granted in favor of Defendants, and against Plaintiff, on Counts II, III, and V, unless another tolling doctrine is shown to apply.

> **B.    The doctrine of fraudulent-concealment tolling does not toll the limitation period.**

Notably, Plaintiff's Second Amended Complaint also appears to invoke the doctrine of fraudulent-concealment tolling:

> Defendants' acts of fraudulent concealment, which were systemic and affirmative, rendered Plaintiff unable to recall the details of his abuse and mistreatment and/or convey these details to others. As such, Defendants' acts also prevented reasonable discovery of Plaintiff's injuries by himself or others despite Plaintiff's diligence in trying to ascertain why he was in such terrible physical and mental shape by the end of his stay at Legend of Allentown.

Second Am. Compl. ¶ 30. Plaintiff counsel's May 15, 2023 Demand Letter provides further detail of these fraud allegations, including that Legend staff falsified records and reports to say that Plaintiff "declined help in showering, cleaning himself, and getting dressed," that Plaintiff "was not hungry and/or did not wish to eat," that staff "failed to transport [Plaintiff] to medical appointments due to *his* alleged refusals," and that Plaintiff refused his medication. *See* Demand

Letter at 2-3. Importantly, the inclusion of these allegations in the May 2023 Demand Letter shows that, to the extent such fraud was concealed, Plaintiff was nonetheless aware of it by May 15, 2023. The same Demand Letter that alleges Defendants concealed "falsified records regarding [Plaintiff's] alleged refusal to accept medication, assistance, and/or meals" also states that Plaintiff counsel "continued to investigate the systemic issues" at Defendants' facility from April 2023 through the date of the Letter, and that such investigation "uncovered the reprehensible and actionable conduct of Legend's staff." *See id.* at 1. The Court is therefore satisfied that Plaintiff, through his counsel, exercised due diligence in investigating the Defendants' fraudulent practices, but it is also compelled to find, based on the language of the Demand Letter, that such investigation was conducted prior to May 15, 2023.[4] Since fraud allegations will only toll the statute of limitations "until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence," *Wise*, 420 F. Supp. 2d at 395 (quoting *Beauty Time Inc.*, 118 F.3d at 144), the Court cannot find that the doctrine of fraudulent-concealment tolling applies. The two-year statute of limitations began to run by mid-May 2023, and thus Plaintiff's personal injury and fraud claims—brought on September 18, 2025—are still barred. The Court will grant summary judgment in favor of Defendants, and against Plaintiff, on Counts II, III and V.[5]

---

[4]    Plaintiff's only supplementary evidence provided in opposition to summary judgment (the Johnson Declaration) does not contest or challenge the timing of these discovery events. *See* Johnson Decl.

[5]    Defendants have also asked the Court to rule in their favor with respect to Plaintiff's "claims for personal injury damages," however the Court finds it premature to discuss the nature of damages, as the Motion sought judgment only for three counts, and the case proceeds as to the four remaining counts.

**V.    CONCLUSION**

Defendants' Motion to Partially Dismiss is hereby converted into a motion for partial summary judgment and granted. After a review of the record, inclusive of the parties' supplementation, this Court finds that neither the discovery rule, nor the doctrine of fraudulent-concealment tolling, applies in this case. Accordingly, Plaintiff's personal injury and fraud claims are barred by Pennsylvania's two-year statute of limitations. Summary judgment is granted in favor of Defendants, and against Plaintiff, on Count II (Breach of Duty of Care), Count III (Fraud), and Count V (Negligence Per Se - Violation of Resident Rights Under Pennsylvania Personal Care Homes Licensing Law) of the Second Amended Complaint. The case shall proceed as to the remaining counts.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge